Good morning. We have three argued cases this morning, but before we proceed with the arguments, I think Judge O'Malley has a motion she'd like to make. Thank you, Judge Dyke. I am extraordinarily privileged to move the admission of Scott Lenardo, who is a member of the Bar and Good Standing in the highest court of Illinois. And I have extensive knowledge of his credentials after he graduated with honors from Georgetown Law School. He did me the favor of clerking for me for two years in the Northern District of Ohio, and then after practicing law for several years in Chicago, I lured him back to be with me for my inaugural year here on the court, and I'm really glad I did. I'm sorry to have to lose him, and I can tell you that I am more than satisfied that he possesses all the necessary qualifications to become a member of this Bar. Should we grant the motion? I've been mulling it over, but I had the opportunity to work with him on cases with Judge O'Malley, and I think we should grant it. The motion is granted. Mr. Lenardo, thank you for your service to the court and for all your exceptional work, and welcome to the Bar. Thank you, Judge. Raise your right hand. You swear to confirm that you report yourself to the attorney counsel of this court, while privately and according to law, you shall support the Constitution of the United States of America. I do. Congratulations, and welcome to the Bar of the United States Court of Appeals for the Federal Circuit. Thank you. Welcome, Scott. Our first case this morning is number 2011-1329, Mayer Intellectual Property v. Bodom, Mr. Rigg. Thank you, Your Honor. May it please the Court. The District Court erred when it stripped Bodom of its ability to present a defense at trial by improperly excluding testimony and evidence that had been properly disclosed under the Federal Rules of Civil Procedure. The rulings culminated in Bodom not being permitted to use any witness, factual or expert, to testify about prior art or obviousness. These errors included excluding the primary prior art evidence, a Bodom three-cup French press, during the middle of trial after he had previously ruled during the pretrial process that we would be able to use that item. He precluded Bodom's president from testifying about factual issues relating to the Bodom three-cup and other prior art, despite the fact that that testimony had been identified in interrogatory responses during discovery, specifically identifying the art and the testimony that he was going to give. Let me ask you a question. With respect to your disclosure, I take it you rely on these interrogatories two and three as well as 16, correct? That's correct. Supplemental 16. With respect to anything that was in document form, like the catalogs or the newspaper articles, were those actually produced in the hard copy form? Those were produced in the hard copy form during discovery. So in response to requests for production of documents, they were produced. That's correct. They were also submitted as part of the pretrial order and authenticated without objection from plaintiffs. Let me understand something. My thought was that you were relying on the catalogs, for example, to corroborate the witness testimony that was excluded but not as independent pieces of prior art, which you believe on their face rendered the claims invalid. Is that right? That's correct. Because you recognize, I would assume and agree, that failure to have disclosed them in the interrogatories might be a problem to using them as prior art. If that were your purpose, then maybe the judge would have been justified. And the judge had only ruled that we could only use two pieces of prior art. The catalogs and the drawings of the containers showing the two-to-one height dimension, we were not offering as prior art. Mr. Bowdoin was going to testify. He had 36 years of experience with the company. He had been selling this product since the 80s, so he knew all of this stuff. And the catalogs would demonstrate it was on sale. The catalogs also demonstrated what the structure looked like, the drawings of the containers. I assume his testimony was going to establish the prior art status and the drawings were used to corroborate that testimony. That's correct. As part of the record, we provided an offer of proof and laid out his testimony for the district court and it's also part of the record here. And that testimony was directed solely to simply laying out this was prior art, this existed, it had this feature, and it's the same as the exemplar that we were using that we wanted to introduce to the jury. And you can see that the catalogs were not actually identified as prior art in those interrogatories, even though you identified the corresponding product? They were, yeah, the corresponding, the products were identified strictly Chambord 1923, which corresponds to the Bowdoin Three Cup. The catalogs themselves were not specifically identified as prior art. There were other pieces of prior art that were identified in the interrogatories that were also excluded, right? That is correct. And how many pieces of prior art, is that three pieces? No, the art that was identified in the interrogatory included all of the Bowdoin French presses of various… No, but I'm just saying the district court excluded additional prior art that was identified in the interrogatories. What I'm getting at is what's the scope of that exclusion? How many pieces of prior art were excluded on that basis? Ten. We identified all of the prior art that was listed in the reissued Ghedini patent. That was specifically identified in the interrogatory. That's the reference to the file wrapper? Yes. Okay. And also the Insta Brewer. I think those were probably the two others. And in the reference to the reissued Ghedini patent, that prior art included another reference. Within the prior art that we identified there was another item, a Belgian patent, that showed a milk frother with a two-to-one height container. That was also excluded. What was the basis for that exclusion if they weren't mentioned in the expert report? Originally, the motion in limine was directed to a laundry list of items that we had added and didn't identify in the interrogatory response. I'm not sure… Well, let me say this. What the judge ultimately did is he said, your interrogatory answer sets your outer limit for the amount of prior art you can use. Then he said, your expert, his opinion only relied on the Bodum Three Cup and the Ghedini, the Freibas patent. He said, you're now, I'm excluding your expert, but you're limited to those two pieces of prior art that your expert used. Despite the fact that we had separately identified this prior art and identified it in the interrogatories and indicated that's what we were going to rely on for additional… If you were to look at the report in its entirety rather than in pieces as the trial judge did, there are other pieces of prior art that are mentioned. He obviously doesn't agree that they're absolutely necessary for an obviousness analysis, but have you matched up those prior arts that he mentioned in anticipation and inequitable conduct as part of his report to your interrogatories to see if everything that he mentioned was disclosed? I believe they all match up. His report, what the judge did, and you're right, he sort of dissected his report and said, first of all, it was a bound volume, it was a single document. And that report indicated in one section under a title that was Frothing and Prior Art Apparatuses. Mr. Anders identified and said, it's well known in the prior art to use a device, a container that has a plunger to froth milk. One of ordinary skill in the art would know seeing a plunger in a container that could froth milk, and he identified three paths. Later on, he makes the conclusion, he makes the argument that it's well known in the art to have a device, a container that has a plunger, and everybody in the prior art, everyone of ordinary skill in the art understands that if you have a plunger in a container, that device, that structure can be used to froth milk. He also said, in his opinion, that Brady and others of ordinary skill in the art knew and were familiar with the Bowdoin French Press. And he says, basically, what Brady did was copy an old apparatus, a container with a plunger, which was known to be capable of frothing milk, that was clearly set forth in his opinion when he identified those three pieces of prior art, and then combined it with a method for frothing milk, one, the Fraybach patent, which he also identified, which clearly shows how you pour milk, I mean, this isn't rocket science, you're pouring milk into a container and you're plunging a plunger. That was it. He said, when you see that plunger, when you see that container, it's obvious to combine it with a method that uses a plunger. That was his opinion. There was nothing else to say in order to show why this invention was obvious. Did your opposing counsel argue to the judge below that he should take each piece of the expert's report and force them to be self-contained? In other words, that you couldn't look at the report as a whole, which is what the judge ultimately did? I didn't see the argument. They did make that argument. And we said, well, it's a single report. And the judge said, well, you didn't incorporate Part B into Part A. But that seems a little bit of a stretch because the judge also relied on the list of items that Mr. Anders put in Part A of his report. I mean, Rule 26, with respect to experts, is to put a party on notice as to what the expert's opinion is so they can prepare in advance of trial to cross-examine or question it. If you read Mr. Anders' report, you knew what his opinion was. All we were doing was putting Mr. Anders on to say exactly what was in his report. Was Mr. Anders opposed? No. Neither expert was opposed in this case. It's unclear, but the photo of the three cups was never actually introduced into evidence? No. There's a mention in the red brief that it was at least referred to on cross-examination. On cross-examination, I was allowed to use a catalog that showed a picture of the three cups. We went to then admit it, and we were opposed to the admission, and then we got into the discussion about the testimony of Mr. Anders and whether we were trying to do an end run around the judge's decision with respect to Mr. Anders. Can I ask you a question on inequitable conduct? Do you mind if I move you to that? Certainly. Thank you. You understand, of course, that the district court judge is not compelled to give this question to the jury or to allow any evidence in a jury trial. Did you ask him for a separate bench trial for inequitable conduct? As part of the brief, I believe the party said that we could get an advisory opinion from the jury or it could go to the bench, and I think plaintiffs actually asked for it, that if it was going to go and be heard, it should be heard at the bench trial before the judge. But the motion that he ruled on to exclude it was a motion in limine, right? Not a motion for summary judgment? Right. It was not a summary judgment. It was a motion in limine, and he said the evidence isn't sufficient for me to allow this to go in. Seventh Circuit law, which controls on evidence, says you cannot issue a motion in limine on the basis of the sufficiency of the evidence. I mean, it was sort of blindsided. We were essentially left with a summary judgment on no inequitable conduct without any briefing or any opportunity to really brief that decision. And then you raised that issue with him in your motion for reconsideration? I believe we did, yes. Okay. With respect to Seagate and Wilson infringement, you argue that Seagate requires one to seek a preliminary injunction. We've never gone back to that, but almost every district court that's considered it has said that Seagate doesn't really require that. I think if you read the Seagate opinion, most of the opinions from the district court say there's no categorical rule that if you want to get willful infringement, you have to file a preliminary injunction. The decision in Seagate was very clear. It said, first of all, willful infringement is normally based on pre-litigation conduct. That's the normal court. Okay, but not the only court. Not the only court, no. In this case, there was no pre-litigation conduct that was identified, and plaintiffs didn't move for any willful infringement based on pre-litigation conduct. So the only thing left was post-litigation conduct. And Seagate is very clear that it says, when you seek enhanced damages for willful infringement based solely on post-litigation conduct, the patentee must make an effort to stop the allegedly willful infringement or forego the right to accrue damages. In this case, though, for the first year after the lawsuit was filed, there wouldn't have been any incentive on the part of the patentee because you stopped making the Version 1 frothers, correct? Correct. So the willful infringement claim wasn't even added until after a year into the lawsuit. Right. It was added, and plaintiffs made the argument at trial that the use of the Version 2 frother, the continued use, and the delay in changing over to Version 3 was what the willful infringement was. The case was ongoing at that time. The court had jurisdiction, and I think what Seagate really says is you can't sit around when you have the jurisdiction, when the court has jurisdiction over a case to just allow damages to accrue. What if we disagreed that that was a categorical rule out of Seagate? Then what is your argument? Your argument is that it doesn't satisfy the objectively unreasonable test, right? Oh, yes. You mean what's our argument for no willfulness? Yes, assuming that it's not a categorical rule. Perhaps it's a factor the court can consider, but if it's not categorical, if we don't agree with you that we adopt that categorical rule, then what's your fallback provision? I think the fallback provision that the court talks about is you can look at whether it's objectively reckless, and you can look at the facts. But using your hypothetical that you give it up, I think the court makes very clear in its decision that it recognizes that in some instances you can't get a preliminary injunction. You may show likelihood of success on the merits, but you can't get it because of the other factors that you have to use in order to get preliminary injunction. And it says in that event you can look at the facts. In that event means you've made an effort. Wait, wait, wait. You always have to satisfy the objectively unreasonable test regardless, right? Yes, yes you do. In addition on the willfulness, we think that even if you get away from Seagate, the Federal Circuit has indicated that when you design around a product during the pendency of litigation to a non-infringing product, willfulness and enhanced damages should not be permitted. And in this case, we designed around with our version 2. It no longer infringed the 087, and we designed around with our version 3, which no longer infringed any patents. And that was all done prior to the court and prior to plaintiff moving for summary judgment of infringement. But for a year you concede, though, that your version 2 arguably still infringed because of O-ring. I think it was 8 months. 8 months? All right, well. We don't concede it infringes. Our position is that the version 2 with the O-ring does not infringe. Okay. All right, Mr. Rigg, you're out of time. We'll restore your 3 minutes of rebuttal.  Mr. Krumholz? Good morning. So dealing first with the exclusion of the prior art issue, which was the first issue discussed with the court, I think the first thing we do need to figure out is exactly what rulings were worked on. What would be the basis for excluding the prior art that was identified in the interrogatory, the 10 additional pieces of prior art? How could that possibly be correct? Well, there were 5 pieces of prior art that were in the interrogatory response. What 5? Well, certainly the 3-cup was in there, the Cadini patent was in there. There was also, I think, a visual image from a movie. There was also a catalog. And also see references of record in RE 37137, so that would be all the references of record in that patent. Far more than 5. Well, yes, in that sense, I certainly agree it's more than 5, but in terms of the specific references that were identified, there were the 5. The jury instructions cite 3 pieces of prior art and say the jury can only consider those 3. Why are we down to 3 if you're even conceding 5 right here? Well, actually we're down to 2 as a practical matter because the court made 3 rulings, none of which actually dealt with the modern 3-cup. One of those 3 rulings was that they were limited to the prior art, 2 pieces of prior art identified in the expert report. Correct. What's the basis for that? Well, because, Your Honor, from the standpoint as a trial attorney and a trial court dealing with these matters, it is standard practice and certainly nothing wrong with during discovery dumping a whole lot of prior art during the discovery process. That's not answering the question. What's the basis for excluding the prior art that was identified in the interrogatory but wasn't in the expert report? We've said in Weyers, Hermann and Dean, other cases, that you can have prior art that's not addressed by the expert, at least where there's simple technology, which this is. So what's the basis for excluding this other prior art? Because I think at the end of the day, the court concluded that we were not unnoticed that the rest of the art was used. Are you saying you never got the interrogatories? No, no. We had the interrogatories, but then there was a further narrowing as to what the case was going to be, and we had the right to rely on what they represented their case was going to be. Where's the further narrowing? In the expert report. The expert report's not a further narrowing. That's what the expert's going to testify on. That's nothing about what else might be introduced as evidence. You know, in many patent cases, there are actually no experts at all in simple case technologies, and so a rule that says it's not also in the expert report, it's not fair game, would seem to be an unusual rule. I think we have to take it in the context of this case and the court exercise. Is there some stipulation by the parties that only those matters disclosed in the expert report will ever be raised at trial? Was there a stipulation in this case? No, there was no such stipulation. So why are they then precluded from introducing anything not in the expert report, which they had fairly disclosed in the interrogatory? Because I think in the context of this case, the judge exercises discretion to say that they had represented what they intended to offer to the court, and offered to the jury. Represented what they intended to offer to the court where? I mean, these items are in the interrogatory, they're in the expert report to the extent he considered them. They're not the basis of all of his opinions, but considered them. They're also in the exhibit list. So I guess I'm kind of confused as to how you were not on notice that these were fair game that they intended to introduce at trial. Well, I think it's a combination of that with the ruling on the lay witness piece. A ruling I'm also having a little bit of trouble with. Why is a lay witness not allowed to substantiate the prior art status? Certainly, the judge would be free to be very careful and cautious of this witness, and he may not replace the expert by offering testimony on ultimate conclusion or obviousness or opinion testimony. But my understanding was they intended to present him solely as a fact witness to show the date upon which this product was sold based on his personal knowledge at the company. I don't see how that could be excluded. That would not necessarily be excluded, except I think the judge exercises discretion in saying that that coming in without expert testimony, given the nature of how they intended to use what their obviousness argument was, was inappropriate. So that would imply that there's some rule that says, even in very simple technology cases, that expert testimony is required. But we've never imposed that. We've actually said the opposite in many cases. And I don't think... I'm certainly not asking for a blanket rule on this. I understand the technology itself... But you're not able to come up with any justification for the ruling. Well, in this case... So I understand that the technology itself is not complicated here, but the nature of their claim on obviousness was such that it was not something that could or should be left to the devices of the jury to speculate on. You didn't argue that, though. That wasn't the basis for your argument to exclude the lay testimony. Your basis for the argument was that lay testimony just is never appropriate for purposes of establishing invalidity without corroboration. Of course, they had corroboration here, but the judge seemed to buy that, that that meant no lay testimony on this issue. Well, I think that there are a couple of different points there. I think what happened was the judge, in exercising his discretion on discovery issues, had excluded a lot of the evidence that they wanted to bring in. And they then tried to bring it in in two different ways. They tried to bring it in on a lay witness basis. What's wrong with that? Well, it goes back to the point that I was trying to make a few moments ago. So the obviousness case was going to be that there is this French press out there that has certain dimensions, and it would have been obvious for one of skill in the art. So I looked at that French press and concluded that the dimensions would have worked better on a milk frother. This is the height two times the diameter, right? Right, yes. So we don't dispute that a French press theoretically can be used as a frother. But there was a quantum belief to say that because... So what is that? It has nothing to do with the exclusion of this other prior art. We'll get to the three-cup frother. But we're talking here about the other prior art that was identified in the interrogatory, that witnesses were identified who would testify to it, that prior art was listed as exhibit. What possible justification could there be for excluding that? I'm sorry that I'm not being clear. I think the justification is that the court felt that this evidence should not come in without expert testimony coming in with it because it was just going to lead to speculation for the jury. But that's not what the judge said, and it's not what you argued. In terms of lay testimony, your entire argument rested on the barbed wire doctrine, which he was confused about and never heard about, and you convinced him that that required him to exclude the lay testimony. I mean, you looked at the whole transcript. There was no other basis upon which you made this argument. Well, he didn't base it on the barbed wire doctrine. Ultimately, we had said that, Your Honor, we're concerned, and we could have waited until they tried to admit, but we tried to handle it in advance because we saw it coming. So, Your Honor, we're concerned because the only way the modern French press could come in was by having some testimony because somebody had the actual prior art. There had to be corroboration. And there had to be corroboration. So, what's the basis for excluding the catalog as a source of corroboration? Well, there's a whole separate question as to whether or not they could do it under the barbed wire doctrine, but that's not what he ultimately ruled. He did. At the end of Plano's case in G.P., he argued that the three-cup French press would not come in based on your barbed wire argument. He specifically ruled that on the transcript. If I can pull out the slide. Respectfully, I don't think that's what he said because he actually went so far as to say, well, actually, if I... I'm leaning towards saying that it does corroborate, but I don't need to get there because when I ruled originally on the discovery motions, what I intended to say was that I am excluding this for all purposes related to prior art. I'm not... I didn't intend to say just as much what. The catalog wasn't identified in the interrogatory. Has it itself been prior art? Because it was not identified there and it was not identified or used by the experts, so we weren't on notice. Hold on. I'd like you to turn this... I don't know why I didn't bring this up, but at 4378 in the expert report, in the table when he's talking about the experts, when he's identifying what in the prior art shows the height of two times the diameter, he cites base number B01781. When I pulled B01781, it's the catalog. So the expert actually does... I don't know why they didn't bring this up. The expert actually uses and refers to in his claim chart the catalog, the drawings in the catalog. So... Hold on. Well... So, I mean, it seems a little harder for you to argue it wasn't in the expert report when actually at least one page of it is expressly referenced in the expert report as the basis for the exact limitation that you're saying was not proven or established. It certainly does say that, though. Yeah, so it seems like you're wrong, about whether it was referenced in the expert report. I mean, accepting my representation that B01781 is a reference to the catalog, which it is. Your Honor, I guess... The court was led astray with his belief that the expert didn't rely on it or specifically cite it, and it was only in the background section. Now, that's not entirely your fault. They didn't point it out to him, actually, expressly in response to your arguments here, but it isn't... The arguments are wrong. The catalog is actually referenced by the expert expressly. So that's another reason it should have gotten in, it seems. Well, there is... You're right that there is this page that is referenced here, and I would need to consider it further. This is not an issue that has been raised by any of the parties up until this moment in time. Well, but can we turn to the expert report? Because one of the main decisions, it seems, that is important is the exclusion of the expert testimony entirely on the basis of the conclusory nature of the report, and in particular the cite to immunogenesis, which I looked back over, and, I mean, this is a really different case from that. There was no plain chart there. There was no detailed element-by-element analysis. The expert report was literally a matter of sentences concluding a couple of sentences of, this is just obvious, you know, and there's no detailed analysis. And here you have these plain charts where he goes element-by-element referring to the exact place in the various prior art references and or catalogs where each element is present. So what is the failure of this expert report? Because it doesn't seem to me to be justified on a lack of sufficient detail. So is there some legal or factual link which is entirely missing here? Respectfully, the plain chart, I think, begs the question. The plain chart identifies the pieces of prior art upon which he's relying to say that it's obvious. So don't dispute that. But there's nothing in the plain chart that answers the question of why one of skill and the art combine, which is the fundamental problem. Okay, well, but he says at JA 4379 a designer of ordinary skill would have been familiar with the methods for aerating milk-based liquids as well as the structure of the French press apparatus and thus the combination would have been obvious. Why isn't that saying, look, the level of skill here is low, which we all recognize. I mean, these are French presses. And, you know, it would have been obvious because the ordinary skilled artisan would know that these are the various ways you can aerate milk. So why wouldn't it have supplied? It seems to me that's an express recognition of a motivation to combine. Two comments. One is, in our view, all he says is somebody of skill in the art would know of the art. All he has said is that here's two pieces of prior art. A person of skill in the art would have known that this art exists, which is a truth. He's saying that these are all methods for aerating milk-based liquids and that one of skill in the art would have known of the methods of aerating milk-based liquids. And I don't dispute that. Those are things that are known. The next question is, what are we combining and would one be motivated to combine? And it goes back to what I was saying a few moments ago, which is, this is not... If that three-cup French press frothed milk, if that's what it was designed to do, well, frankly, we'd probably anticipate it, but it would certainly be a very different case. But it's not designed for that purpose. It's designed for a different purpose. So it wouldn't be obvious for one of skill in the art to look at something that's designed for an entirely different purpose and say, I should use that structure, right? Because there's no reason to believe... There's no reason to look at a French press and say, this French press is going to froth milk better than the frothers on the market. And the best evidence... He doesn't have to think it's going to be better than the frothers on the market. He only has to think that it could be useful for that same purpose. Well, he has to presumably think that... Well, there has to be a reason to motivate, which presumably is to get something better on the market. And I'll give you the best example. No, no, no, it can just be the same. I mean, what's he supposed to say? Well, I know we're having trouble, and as we explained to the jury, we're having trouble figuring out what the motivation would have been to do that based on that evidence, because there is no reason that you would look at a French press and look at the structure and say, I should use that on a frother for whatever reason. And the best example that I can give is Bowdoin itself, because that three-cup French press was on the market since 1982, according to them. It had that two-to-one ratio, according to them, which is not entirely clear. But it wasn't until... I think the record is undisputed on this. It wasn't until almost immediately after Mr. Brady came out with the patented product, and they saw in 1998, 16 years later, that for the first time they started to use the same structure. Yeah, after 10 years of selling the French press. After 10 years of selling that French press, right? Yeah, after 16 years of selling the French press. So they had a French press that had a two-to-one ratio, for 16 years, and it never occurred to them that they should have a two-to-one ratio. And it wasn't until they saw the invention, and almost immediately after that, developed the exact same product. So, you know, it wasn't obvious to both of them. And respectfully, I don't think it was obvious at all. Your time's up, but Judge Dyk has said that I could ask one question with respect to infringement. Your argument for getting around Akamai, I'm not quite sure I understand it, or the judge's ruling with respect to that. I mean, you say, well, we know they intended for the customers to ultimately use it, but how can you say the customers are practicing the providing steps? Well, I guess I have two pieces to this. I think there is a serious waiver problem with the way that Bonham has presented this, because while they have made a conclusory statement from time to time, they have never actually joined this issue with the court or with us, because the issue becomes what does providing mean? And I know claims construction is a process that goes on throughout the case. But after Akamai came out, they did raise this issue with the judge. They made a sentence in the inducement piece. They never made an argument on the direct infringement case. So from our view, as we talk about in our papers, we think that's waived, and the judge as well. The judge had already ruled on summary judgment before Akamai ever came out on direct infringement. I need to check on the timing of that, honestly, Your Honor. The issues that they should have joined, from our standpoint, if we're going to have a discussion about that, then we have to understand what providing means. And from our standpoint, providing, and this is not the way to have a claims construction discussion, is making available or having access to... Not providing by a third person. Right. It doesn't need to be provided by... There's nothing there that says it has to be provided by a third person. So if I took it off the shelf, I'm getting access to it, I'm making it available. So if we're going to have a discussion about this, the user clearly is doing it, and there's also lots of inferential evidence, circumstantial evidence in the record that Bodum itself is doing it, if we have to look at it from that perspective. Well, when Bodum filed their motion to restructure or reconsider the summary judgment motions, which they did based on Akamai, you didn't ask the judge then to construe providing, did you? That wasn't the argument you made in response. The argument you made was, well, they ultimately know what's going to happen, so that doesn't matter. Well, it depends which argument we're talking about. On some of the arguments, we argued that they had waived whatever the argument, whatever they're ultimately raising now, and the judge found waiver both directed infringement on version one and document of equivalence on version two, so I think it depends on which piece we're talking about. But, yes, but ultimately, in response to a couple sentences, we said, yeah, the user is clearly doing it, but we don't view that as, we didn't think they had joined the issue, so I'm not sure that the burden would be resting with us. But, again, if we are pushing in that direction, I think it's very clear that there's nothing in the claim that says it has to be a third party. Providing is just availability or access. The summary judgment ruling on the version two frother, am I wrong, or did the district court conclude that somebody must have tested it, and therefore ruled summary judgment in the absence of any evidence of any kind from anybody that it was tested at all, much less tested in the U.S.? No, I think there is some evidence of testing. But in summary judgment, don't you incur facts in favor of the non-user? Certainly, it's a general proposition. I mean, on top of it all, they're testing facilities even abroad. I mean, their research in many, their people are all abroad, so if it was tested, probably it would be abroad. I mean, but there seems to be no evidence at all to support that, and the district court's sort of wild west style of it must have been tested, because nobody in their right mind would put a product on the market that they didn't first use themselves seems troubling to me. Seems like he's putting what he thinks must have happened into the record rather than relying on actual evidence. You cite some deposition testimony, but that was never offered to the court in your motions in support of summary judgment. Yeah, I do have references here. Yes, that's true. I mean, we were not counsel at that time. Right, we can't consider depositions that you never put in the record. Well, and for that matter, the judge didn't have them in front of him in summary judgment, and they didn't respond to them in opposition, because they weren't part of what you put forth to proffer as evidence on your summary judgment motion. Yeah, I think we would argue that it is harmless, because they've had the opportunity, I mean, they're undisputed in the record, and they've seen them on appeal, but I think... Partly there, because they got to argue about it on appeal, but not put any facts to the contrary below at the actual summary judgment stage, where it would have mattered. Well, at no point ever have they, whether then, or... But if you'd moved for summary judgment and said, we think your testing occurred in the U.S., and here's our deposition testimony, then they could have put in testimony in response that says, no, our people are all abroad. Yeah, we tested it, but we tested it abroad, but they weren't given that opportunity, because they weren't on notice at all about your evidence as the basis for your claim for summary judgment. I understand, but at no point ever have they actually ever denied doing it. They've just been taking the more formalistic approach, which I don't say... I shouldn't have said it that way. But their focus has been on... Not that they don't do it. It's the sufficiency of the evidence. Okay. Thank you, Mr. Cromwell. Thank you. Mr. Rigg, do you have anything further? I think I don't have anything further, Your Honor. Okay. Thank you. The case is submitted. Thank you.